ACCEPTED
15-25-00121-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/23/2025 12:56 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00121-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/23/2025 12:56:45 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS, 15TH DISTRICT OF TEXAS

## HAYS COUNTY, TEXAS, RUBEN BECERRA, DEBBIE INGALSBE, MICHELLE COHEN, MORGAN HAMMER, AND WALT SMITH, APPELLANTS

## V.

## LESLIE CARNES, JIM CAMP, CATHY RAMSEY, AND GABRIELLE MOORE, APPELLEES

ON APPEAL FROM THE 419TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS
CAUSE NO. D-1-GN-25-002049
THE HON. CATHERINE A. MAUZY, PRESIDING

## APPELLEES' MOTION TO DISMISS UNDER TRAP 42.3(A)

BILL ALESHIRE
BAR NO. 24031810
ALESHIRELAW, P.C.
3605 SHADY VALLEY DR.
AUSTIN, TEXAS 78739
TELEPHONE: (512) 320-9155
CELL:       (512) 750-5854
FACSIMILE: (512) 320-9156
BILL@ALESHIRELAW.COM

SAVE OUR SPRINGS ALLIANCE
WILLIAM G. BUNCH
STATE BAR NO. 03342520
BILL@SOSALLIANCE.ORG
ROBERT "BOBBY" LEVINSKI
STATE BAR NO. 24097993
BOBBY@SOSALLIANCE.ORG
4701 WESTGATE BLVD., D-401
AUSTIN, TX 78745
TEL: 512-477-2320
FAX: 512-477-6410

ATTORNEYS FOR APPELLEES

Appellees ask the Court to dismiss this appeal for lack of jurisdiction and grant appellees judgment for costs.

## A. INTRODUCTION

1.     Appellants are Hays County, Texas, Ruben Becerra, Debbie Ingalsbe, Michelle Cohen, Morgan Hammer, and Walt Smith, in their official capacities as members of the Hays County Commissioners Court (defendants in the trial court); appellees are Leslie Carnes, Jim Camp, Cathy Ramsey, and Gabrielle Moore, voters and property taxpayers of Hays County, Texas (plaintiffs in the trial court).

2.     This case began as an Election Contest regarding a $439 million road bond election which was ordered in violation of the Texas Open Meetings Act. In response to that original lawsuit, the Hays County Commissioners Court filed a bond validation lawsuit pursuant to Tex. Gov't Code chapter 1205. The Election Contest lawsuit was then consolidated with the bond validation lawsuit.

3.     On June 23, 2025, The Honorable Catherine A. Mauzy, Judge

of the 419th District Court of Travis County, signed a Summary Judgment Order granting Counter-Plaintiffs' Election Contest, finding the road bond election was thus invalid and void because the election was called in violation of the Texas Open Meetings Act. APP. TAB A. On June 26th, 2025 Judge Mauzy signed the Final Judgment, denying all relief to Hays County under its bond validation petition because the bonds were not approved by voters at a valid election. APP. TAB B..

4.      Pursuant to Tex. Gov't Code 1205.023, Hays County's bond validation lawsuit is "a proceeding in rem" and a class action binding all Hays County property owners, taxpayers, and anyone who has, or claims, "a right, title, or interest in any property or money to be affected by the public security authorization or the issuance of the public securities." While the trial court has *in personam* jurisdiction over everyone in the "class," as an *in rem* action, there is no named "defendant" whom the bond validation suit is "against." Not even the Attorney General.

5.      Pursuant to Tex. Gov't Code § 1205.042, Hays County served a copy of their bond validation lawsuit on the Texas Attorney General.

Hays County did not file suit *against* the Attorney General, nor were they required to do so. The Attorney General participated in the trial court proceedings pursuant to Tex. Gov't Code § 1205.063 providing the trial court information and legal analysis about why the Hays County petition was defective and why the road bonds should not be validated. APP. TAB C. The focus of the Attorney General's pleading was on one of the 37 road projects because that project limits extended outside Hays County, and the Attorney General (and Counter-Plaintiffs) argued that Hays County lacked authority to spend bond funds on projects outside it jurisdictional boundaries. As opposed to being a party litigant, the Attorney General's role was to provide information and legal analysis to the trial court focused on the validity of the bonds. This is demonstrated by the Prayer in the Attorney General's pleading,  asking only that the Court "enter such order as may be proper." (Snip from APP. TAB C, Answer by the Attorney General)

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Attorney General respectfully prays that upon final judgment, this Honorable Court enter such order as may be proper. The Attorney General also requests that the Court award it any further relief to which it may be entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

6. The core dispute in the case brought by Appellees below—and on appeal—is whether the Hays County Commissioners Court had violated the Texas Open Meetings Act, an issue in which the Texas Attorney General is not a party. When Hays County filed the appeal at issue here, they did not name the Texas Attorney General as a party to the appeal, naming only themselves as Appellants and the voter/taxpayers as Appellees. Hays County did not comply with TRAP Rule 25.1(d)(9), and on July 21, 2025, this Court asked the parties to address the issue of the jurisdiction of the 15th Court of Appeals. That jurisdiction, as it relates to this appeal, is whether the underlying lawsuit was "against" the Texas Attorney General. See Tex. Gov't Code §

22.220(d) (granting to the 15th Court of Appeals "exclusive intermediate appellate jurisdiction over" civil cases regarding "matters brought by or *against* the state or ... office ... in the executive branch of the state government." (emphasis added). Because the bond validation lawsuit was not "against" the Attorney General and because the issues on appeal in this is really a dispute over the Open Meetings Act and Election Contest between the Hays County Commissioners Court and the Hays voter/taxpayer appellees, Appellees respectfully ask the Court to dismiss this appeal for lack of jurisdiction.

## B. ARGUMENT & AUTHORITIES

7.     The Court has the authority under Texas Rule of Appellate Procedure 42.3(a) to dismiss an appeal for lack of jurisdiction. Pursuant to Tex. Gov't Code § 22.220(d)(1), the 15th Court of Appeals has jurisdiction only if the matter is "brought by or against" the state or executive branch office. [1]

---

[1]     There is no pleading in the present case that invokes the Court's additional jurisdiction under Tex. Gov't Code § 22.220(d)(2) "challenging the

8.     This issue of whether a lawsuit—which involves only optional or nominal participation by a state agency or official—is truly "against" the state official was addressed very recently in the attached concurring opinion by Texas Supreme Court Justice Young (joined by Justice Busby) in *Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n*, No. 23-0711, 2025 WL 2004685 (Tex. July 18, 2025, Young. J, concurring). APP. TAB D.

a.     The *Six Brothers Concrete Pumping* case was a payday complaint that was administratively adjudicated between the employer and the employee (Tomczak) before the Texas Workforce Commission, which decided in the employee's favor. To obtain judicial review of that administrative decision, Tex. Labor Code § 61.062(d) required the employer to file a lawsuit naming the Commission and the employee as defendants. Section 61.063 required the lawsuit to be filed in the county of the employee's residence, but the employer filed suit in a different county. Whether this filing error was jurisdictional is implicated by

---

constitutionality or validity of a state statute or rule and the attorney general is a party to the case."

application of Tex. Gov't Code § 311.034 which says, in part, "....Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits *against* a governmental entity." (emphasis added).

b. Even though the Workforce Commission was required by law to be a named defendant in that case, Justice Young questioned whether the lawsuit was really "against" the Commission or whether the Commission was merely a nominal party (holding the disputed wages for distribution based on the court's review) and the real judicial dispute was between the employer and the employee. *Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n*, No. 23-0711, 2025 WL 2004685, at *3 (Tex. July 18, 2025)(asking, "But is it clear that 'against' means 'if the governmental entity is a named party'?"). Justice Young used an analogy of a mandamus action against a judge where the judge is "nominally the respondent (or defendant) in a mandamus action" but "has no interest in the case other than the law being properly applied." *Id.* at *4.

9. While the *Six Brothers* case involved a different statute (Tex. Gov't Code § 311.034) that applies to lawsuits "against" state officials,

the issue raised by Justic Young is directly applicable to the 15th Court of Appeals' jurisdiction over appeals "against" state officials. Unlike the Labor Code requirement that the Workforce Commission be "named as a defendant," the Expedited Declaratory Judgment Act (EDJA), Tex. Gov't Code chapter 1205 does not even require the Texas Attorney General be named as a party, and the Attorney General has the discretion to not participate at all in the case.

10. Appellees contend the bond validation lawsuit is not "against" the Attorney General, and the Attorney General's role in that litigation—particularly when the real dispute is between the Commissioners Court and its taxpayers over whether Hays County complied with the Texas Open Meetings Act—is to see that only valid public securities are authorized to be issued. *Compare*, Tex. Gov't Code § 1205.042 (requiring only that the Attorney General be served a copy of the petition) *with* Tex. Gov't Code section 552.324(a)(1) permitting a governmental body to file suit seeking to withhold information from a requestor under the Texas Public Information Act if the suit "is filed in a Travis County district court *against* the attorney general...." (emphasis added).

Appellees' Motion to Dismiss
P a g e | 9

11.   Unless Hays County's bond validation lawsuit is a lawsuit "against" the Attorney General, there is no other basis for jurisdiction in the 15th Court of Appeals.

12.   The core legal issue that will be in play in Hays County's appeal is the application of the Texas Open Meetings Act and the Election Code election contest provision, *not* issues about the validity of the road bonds themselves. The issue is whether the bonds received the requisite approval by voters in a validly called election—an issue that can be litigated on appeal without requiring the appeal be "against" the Texas Attorney General or even necessitating the Attorney General's participation in the appeal. Without Hays County's lawsuit being *against* the Attorney General, the 15th Court of Appeals lacks jurisdiction over the appeal.

## PRAYER

For these reasons, Appellees ask the Court to grant this motion and dismiss the appeal and grant Appellees judgment for costs.

Respectfully submitted,

_____

Bill Aleshire
Texas Bar No. 24031810
AleshireLAW, P.C.
3605 Shady Valley Dr.
Austin, Texas 78739
Cell:      (512) 750-5854
Telephone:  (512) 320-9155
Facsimile:  (512) 320-9156
Bill@AleshireLaw.com

Save Our Springs Alliance
William G. Bunch
State Bar No. 03342520
bill@sosalliance.org
Robert "Bobby" Levinski
State Bar No. 24097993
bobby@sosalliance.org
4701 Westgate Blvd., D-401 Austin, TX 78745
Tel: 512-477-2320
Fax: 512-477-6410

ATTORNEYS FOR APPELLEES

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all parties of record via e-filing on this 23rd day of July, 2025.


MCGINNIS LOCHRIDGE LLP
1111 West Sixth Street, Building B, Suite 400
Austin, Texas 78703
512.495.6000 (telephone)
512.495.6093 (telecopier)
mshaunessy@mcginnislaw.com
idavis@mcginnislaw.com
ajones@mcginnislaw.com
jpiriano@mcginnislaw.com

Lynn Saarinen, Assistant Attorney General
ATTORNEY GENERAL OF TEXAS
FINANCIAL LITIGATION SECTION, GENERAL LITIGATION DIVISION
MC-017
P. O. Box 12548
Austin, Texas 78711-2548
lynn.saarinen@oag.texas.gov
***Attorney General of Texas***


_____
Bill Aleshire

## APPENDIX TO MOTION TO DISMISS

**TAB A:** **Order on Summary Judgment – TOMA & Election Contest**

**TAB B:** **Final Judgment**

**TAB C:** **Attorney General's Answer filed in Trial Court**

**TAB D:** ***Six Bros. Concrete Pumping, LLC v. Tex. Workforce Comm'n*, No. 23-0711, 2025 WL 2004685 (Tex. July 18, 2025)**

06/23/2025 03:45:59 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002049

CAUSE NO. D-1-GN-25-002049

| | | |
|---|---|---|
| IN RE HAYS COUNTY, TEXAS | § | DISTRICT COURT FOR THE |
| *Plaintiff* | § | |
| | § | 126TH JUDICIAL DISTRICT |
| | § | |
| | § | TRAVIS COUNTY, TEXAS |

CONSOLIDATED WITH
CAUSE NO. 24-2885 (HAYS COUNTY)

| | | |
|---|---|---|
| LESLIE CARNES, JIM CAMP, | § | IN THE DISTRICT COURT |
| CATHY RAMSEY, and | § | |
| GABRIELLE MOORE | § | |
| | § | |
| *Intervenor Counter-Plaintiffs* | § | |
| | § | |
| V | § | OF HAYS COUNTY, TEXAS |
| | § | |
| COUNTY OF HAYS, RUBEN | § | |
| BECERRA, DEBBIE INGALSBE, | § | |
| MICHELLE COHEN, LON SHELL, | § | |
| And WALT SMITH, in their official | § | |
| capacities, | § | |
| *Counter-Defendants* | § | 207TH JUDICIAL DISTRICT |

## ORDER ON COUNTER-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On this day, came to be heard the Motion for Summary Judgment filed by Counter-Plaintiffs Leslie Carnes, Jim Camp, Cathy Ramsey, and Gabrielle Moore (collectively "Counter-Plaintiffs"). Accordingly, after careful consideration of the Motion, Hays County Counter-Defendants' Response, Counter-Plaintiffs' Reply, the summary judgment evidence, the pleadings of record, being apprised of the applicable law, and the argument of counsel, the Court finds that Counter-Plaintiffs' Motion for Summary Judgment should be, and is hereby:

**GRANTED**.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that:

Page **1** of **2**

1.  The Court finds that the meeting notice for agenda item K.2 of the Hays County Commissioners Court meeting of August 13, 2024 violates the Texas Open Meetings Act public notice requirement in Tex. Gov't Code § 551.041;

2.  THEREFORE, pursuant to Tex. Gov't Code §§ 551.141 and 551.142, the Court reverses and declares void the action taken by Counter-Defendant Hays County Commissioners Court agenda item K.2 of the Hays County Commissioners Court meeting of August 13, 2024, to wit, ordering the road-bond election on November 5, 2024;

3.  FURTHERMORE, because the Hays County special election for Proposition A road bonds on November 5, 2024 was never lawfully ordered by the Hays County Commissioners Court, the Court declares the election void pursuant to Tex. Elec. Code § 233.012 and GRANTS Counter-Plaintiffs' election contest, and

4.  The COURT hereby ENJOINS the Hays County Commissioners Court from taking any action dependent on voter approval of the November 5, 2024 Proposition A.

SIGNED on this 23rd day of _____, 2025.

_____
Catherine A. Mauzy
JUDGE PRESIDING

06/27/2025 12:05:13 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002049

**CAUSE NO. D-1-GN-25-002049**

| | | |
|---|---|---|
| IN RE HAYS COUNTY, TEXAS<br>    *Plaintiff* | §<br>§<br>§<br>§<br>§ | DISTRICT COURT FOR THE<br><br>126TH JUDICIAL DISTRICT<br><br>TRAVIS COUNTY, TEXAS |

**CONSOLIDATED WITH**
**CAUSE NO. 24-2885 (HAYS COUNTY)**

| | | |
|---|---|---|
| LESLIE CARNES, JIM CAMP,<br>CATHY RAMSEY, and GABRIELLE<br>MOORE<br>    *Intervenor Counter-Plaintiffs*<br><br>V.<br><br>COUNTY OF HAYS, RUBEN<br>BECERRA, DEBBIE INGALSBE,<br>MICHELLE COHEN, LON SHELL,<br>and WALT SMITH, in their official<br>capacities<br>    *Counter-Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br><br>OF HAYS COUNTY, TEXAS<br><br><br><br><br><br>207TH JUDICIAL DISTRICT |

# FINAL JUDGMENT

On June 17 and 18, 2025, the Court conducted the hearing on Intervenor/Counter-Plaintiffs Leslie Carnes, Jim Camp, Cathy Ramsey and Gabrielle Moore's (collectively, the "Intervenors/ Counter-Plaintiffs") Motion for Summary Judgment on Intervenor/Counter-Plaintiffs' Election Contest and also conducted the trial on Hays County, Texas's ("Petitioner") First Amended Petition for Expedited Declaratory Judgment ("Petition") brought under Chapter 1205 of the Texas Government Code. Petitioner, the Intervenor/Counter-Plaintiffs, and the Attorney General of Texas appeared through counsel of record. After considering the pleadings on file, all admissible evidence properly before the Court, and arguments of counsel, the Court, in its order signed June 23, 2025,

granted Intervenor/Counter-Plaintiffs' Election Contest and declared void the November 5, 2024 Hays County Proposition A road-bond election.

IT IS, THEREFORE,

ORDERED, ADJUDGED, AND DECREED that Petitioner's First Amended Petition for Expedited Declaratory Judgment is DENIED in its entirety.  IT IS FURTHER

ORDERED, ADJUDGED, AND DECREED that Petitioner's requests for declarations as to the validity and legality of the public security authorizations that are the subject matter of its Petition are hereby DENIED.  IT IS FURTHER

ORDERED, ADJUDGED, AND DECREED that this Final Judgment, with respect to each matter adjudicated at trial and each such matter that could have been raised is binding, conclusive, and final against Hays County, Texas, the Hays County Commissioners Court, Ruben Becerra, Debbie Ingalsbe, Michelle Cohen, Lon Shell, and Walt Smith, in their official capacities, the Texas Attorney General, the Intervenor/Counter-Plaintiffs, and all who reside in Hays County, including property owners and taxpayers in Hays County, and all who have or claim a right, title, or interest in any property or money to be affected by the public security authorizations or the issuance of the public securities made the subject of this lawsuit.  IT IS FURTHER

ORDERED, ADJUDGED, AND DECREED that, with respect to the consolidated cases, other than the relief granted in the Order on the Intervenor/Counter-Plaintiffs' Motion for Summary Judgment signed on June 23, 2025, all relief not expressly granted herein is denied.  IT IS FURTHER

ORDERED, ADJUDGED, AND DECREED that all court costs are adjudged against Petitioner.  IT IS FURTHER

ORDERED, ADJUDGED, AND DECREED that this Final Judgment finally disposes of all parties and all claims and constitutes a FINAL JUDGMENT.

SIGNED this __26th__ day of June, 2025.

_____
Catherine Mauzy
Presiding District Court Judge

APPROVED AS TO FORM:

MCGINNIS LOCHRIDGE LLP

__/s/ Ian Davis_____ *Signed by permission*
Michael Shaunessy
mshaunessy@mcginnislaw.com
Ian Davis
idavis@mcginnislaw.com
Austin Jones
ajones@mcginnislaw.com
1111 West Sixth Street, Building B, Suite 400
Austin, Texas 78703
*Attorneys for Plaintiff/Counter-Defendants Hays County, Texas, Ruben Becerra, Debbie Ingalsbe, Michelle Cohen, Lon Shell, and Walt Smith, in their official capacities*

ALESHIRELAW, P.C.

__/s/ Bill Aleshire_____ *Signed by permission*
Bill Aleshire
bill@aleshirelaw.com
3605 Shady Valley Drive
Austin, Texas 78739
*Attorney for Intervenor/Counter-Plaintiffs Leslie Carnes, Jim Camp, Cathy Ramsey, and Gabrielle Moore*

OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*/s/ Lynn Saarinen*_____
Lynn Saarinen
Assistant Attorney General
lynn.saarinen@oag.texas.gov
300 West 15th Street, 12th Floor
Austin, Texas 78701-1649
*Attorney for Ken Paxton, Attorney General of Texas*

3

**TAB C**



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 3, 2025

Travis County District Clerk
Attn: Ms. Velva L. Price
1700 Guadalupe Street, 3rd Floor
Austin, Texas 78701

Re:     *In Re: Hays County, Texas*
         Cause No. D-1-GN-25-002049
         Requested Cover Letter:
              *Original Answer and Specific Defenses of Ken Paxton, Attorney General of Texas*

Dear Ms. Price:

In correspondence with your staff, this requested cover letter leads and accompanies the *Original Answer and Specific Defenses of Ken Paxton, Attorney General of Texas.* The *Original Answer* includes references, added as Exhibits, that are part of the case record and included in Intervenor Counter-Plaintiffs' *Plaintiffs' Second Amended Original Petition For Mandamus and Injunctive Relief,* which was accepted by your office with a file mark of 5/14/2025 at 4:56 PM.

Exhibits referenced and incorporated into the Attorney General of Texas's *Original Answer* are:

1. Exhibit P-7 2022-09-13 Travis CC Resolution 518_Hays;
2. Exhibit P-8 2023-12-19 TCCC SH 45 Gap Study Comments 2023-12-19_Item 48;
3. Exhibit P-9 2024-08-26 CC Shea - SH 45 Southwest Extension Discussion Request for
   Removal; and
4. Exhibit P-10 2024-08-26 CC Shea - SH 45 SW Extension-Copy of Hays CC SH45 Gap Proj.

Respectfully,

*/s/ Lynn E. Saarinen*
Lynn E. Saarinen, State Bar Number 17498900,
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
General Litigation Division
Phone (737) 224-4634
Email Lynn.Saarinen@oag.texas.gov
*Counsel for Ken Paxton, Attorney General of Texas*

TAB C

CAUSE NO. D-1-GN-25-002049

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | TRAVIS COUNTY, TEXAS |
| | § | |
| HAYS COUNTY, TEXAS | § | 126th JUDICIAL DISTRICT |

**ORIGINAL ANSWER AND SPECIFIC DEFENSES OF KEN PAXTON, ATTORNEY GENERAL OF TEXAS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Ken Paxton, Attorney General of Texas ("Attorney General"), a party herein, and pursuant to Texas Government Code Chapter 1205, files this Original Answer and Specific Defenses in response to the Original Petition for Expedited Declaratory Judgment ("Original Petition"), filed by Hays County, Texas ("Petitioner"), and would respectfully show the Court the following:

## I.  GENERAL DENIAL

The Attorney General asserts a general denial pursuant to Rule 92 of the Texas Rules of Civil Procedure and respectfully requests that this Court require the allegations of the Original Petition for Expedited Declaratory Judgment be properly proved and that this Court then act in such manner as the interest of all parties require, consonant with equity, justice, and the laws applicable to the facts as proved.

## II.  SPECIFIC DEFENSES

A.  Pursuant to section 1205.063(a)(1) of the Government Code, the following paragraphs and declarations prayed for by Petitioners in the Original Petition are defective:

TAB C

1. Petitioner's assertions in paragraphs 26 and 27 that it has the authority of issue the Bonds authorized by Proposition A and that the Commissioners Court validly and legally approved the order calling the bond election are defective. In addition to potential defects in providing notice of the meeting to call the November 2024 bond election, on which the Attorney General takes no position at this time, some of the proposed projects exceed Petitioner's authority to undertake and therefore constitute violations of its contract with the voters, as addressed in further detail in section B below.

2. Petitioner's assertion in paragraph 30 that its resolution to "reimburse project expenditures from proceeds of future tax-exempt obligations, in connection with all roadways and related expenditures" approved in the November 2024 bond election complies with its contract with the voters with regard to Proposition A is defective because it does not have authority to unilaterally construct roads outside of its boundaries and has not secured the cooperation of the parties necessary for such projects. Further, any effort to instead construct only the portion of the SH 45 Southwest Extension Regional Connectivity Project that is within its boundaries likewise would not comply with its contract with the voters, who were promised a road connecting SH 45 and IH-35, not merely an extension of SH 45 to the Travis County line, well short of IH-35. Although the proposed bond money is for "design", the description of the project presented to the voters was that "the project will allow easier access to I-35". To the extent that any other Proposition A projects involve similar issues, they also constitute violations of Petitioners contract with the voters.

**TAB C**

3.      Paragraph 31 is defective in that, while section 1205.024(6) requires the petition to set out "the interest rate or rates or the proposed maximum interest rate of the public securities," it instead states an *estimated* maximum net effective interest rate.

4.      Paragraph 33 is defective to the extent that Petitioner approved reimbursement of costs of projects that it cannot lawfully complete, as addressed in paragraph 2 above.

5.      The declarations requested in paragraphs 38(F) and (G) are defective because Proposition A includes projects that are beyond Petitioner's authority to construct, thereby preventing it from complying with its contract with the voters and rendering its actions invalid as to those projects.

6.      The declaration requested in paragraph 38(I) is overbroad in that it does not identify the public security authorizations Petitioner seeks to declare valid.

**B.**      Pursuant to section 1205.063(a)(2), the public securities are, or the public security authorization or an expenditure of money relating to the public securities is or will be invalid or unauthorized to the extent that they involve projects that exceed Petitioner's authority to complete. The reasons for such lack of validity or authorization include but are not limited to the following:

1.      Texas courts have long held that the express terms of resolutions and orders calling a tax or bond election become a contract with the voters, who are entitled to receive substantially all of the benefits and security of that contract. *See, e.g., San Saba County v. McCraw*, 108 S.W.2d 200 (Tex. 1937)*; Fletcher v. Howard,*

TAB C

39 S.W.2d 32 (Tex. 1931) (bond proceeds may not be diverted from highway described in county order as it existed on date of election); *Black v. Strength*, 246 S.W. 79 (Tex. 1922) (bond proceeds may not be diverted from improvements designated in order adopted subsequent to election order but prior to election); *Moore v. Coffman*, 200 S.W. 374 (Tex. 1918) (bond-financed bridge must be constructed at location designated in election order). In this case, the contract with the voters provided that, in exchange for approval of the proposition, including agreement to pay the resulting taxes, Petitioner would construct the projects enumerated in the election order.

2.     One of these projects is identified in the proposition as the "SH 45 Southwest Extension (Regional Connectivity Project)." "Regional connectivity" is a term Petitioner applied to several of the projects in the proposition, and while it is not defined, it was applied to various initiatives intended to connect major roads in the area and reduce travel times across the area. Specifically, materials Petitioner prepared for voters regarding the proposition showed the SH 45 Extension project connecting SH 45 southwest of Austin to IH-35 north of Buda – approximately a third of which would be in Travis County (Exhibit P-10 to Plaintiff's Second Amended Original Petition for Mandamus and Injunctive Relief).

3.     However, as counties only have the authority granted to them in the Constitution or by statute (*Canales v. Laughlin*, 214 S.W.2d 451 (Tex. 1948)), a county's ability to use article 3, section 52 road bond proceeds to construct roads extends only as far as its boundaries. *See City of Breckenridge v. Stephens County*, 40 S.W.2d 43, 44 (Tex. 1931) (county's jurisdiction in highway matters is coextensive

TAB C

with the limits of the county (*citing State v. Jones*, 18 Tex. 874 (Tex. 1857)); hence, a county road project stretching into an adjacent county would require the agreement of the adjacent county. Furthermore, projects involving state highways require the cooperation of TxDOT. *See* Tex. Transp. Code § 221.003 (d) (county commissioners court may not directly control state highway improvement unless approved by the executive director of TxDOT). Petitioner's materials regarding the SH 45 Southwest Extension Project listed both Travis County and TxDOT as "potential partners," although Travis County commissioners had notified Petitioner for years that Travis County was opposed to the project. *See* Exhibits P-10 (project map of SH 45 Southwest Extension), P-7 (September 13, 2022 letter from Travis County Commissioners Court to Hays County Commissioners Court opposing the SH 45 Gap project), P-8 (December 22, 2023 - Travis County Commissioners Court Comments for Submission to the Virtual SH 45 Gap Study vigorously opposing the project), P-9 (August 26, 2024 email from Travis County Commissioner Brigid Shea to Hays County Commissioners requesting that the SH 45 Southwest Extension be removed from the bond package since Travis County is opposed and requesting that all references to Travis County as a "potential partner" in the project be eliminated). The Exhibits are also attached to Plaintiff's Second Amended Original Petition for Mandamus and Injunctive Relief which was filed on May 14, 2025. Accordingly, Petitioner has not demonstrated that it can deliver on its connectivity promises to voters as to the SH 45 Southwest Extension project. And merely designing and/or constructing the portion of the road that is within its boundaries would fall short of the connectivity Petitioner promised

TAB C

in the proposition and supporting information provided to voters. The Attorney General therefore objects to it and to any other similarly situated projects.

### III. RIGHT TO AMEND

The Attorney General reserves the right to contest all relief requested by the Petitioners upon further review, upon failure by the Petitioners to properly prove all allegations contained in the Petitioner's Original Petition, or in the event the Original Petition is amended.

### IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Attorney General respectfully prays that upon final judgment, this Honorable Court enter such order as may be proper. The Attorney General also requests that the Court award it any further relief to which it may be entitled.

> Respectfully submitted,
>
> KEN PAXTON
> Attorney General of Texas
>
> BRENT WEBSTER
> First Assistant Attorney General
>
> RALPH MOLINA
> Deputy First Assistant Attorney General
>
> AUSTIN KINGHORN
> Deputy Attorney General for Civil Litigation
>
> KIMBERLY GDULA
> Chief, General Litigation Division
>
> /s/ *Lynn E. Saarinen*
> LYNN E. SAARINEN

TAB C

Assistant Attorney General
State Bar No. 17498900
General Litigation Division
P.O. Box 12548/Mail Stop 019
Austin, Texas 78711-2548
Tel: (512) 936-1659 /Fax: (512) 302-0667
Lynn.Saarinen@oag.texas.gov

*Counsel for Ken Paxton, Attorney General of Texas*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2025, a true and correct copy of the foregoing, *Original Answer and Specific Defenses of Ken Paxton, Attorney General of Texas* was filed and served on the following attorney of record via EfileTexas.gov:

Michael Shaunessy
McGinnis Lochridge
1111 W. 6th St., Bldg. B, Ste. 400
Austin, TX 78703
512-495-6130 phone / 512-505-6343 fax
MShaunessy@mcginnislaw.com
*Attorney for Petitioner*

Bill Aleshire
AleshireLAW PC
3605 Shady Valley Dr.
Austin, Texas 78739
512-320-9155 phone / 512-750-5854 cell
512-320-9156 fax
Bill@AleshireLaw.com
*Attorney for Intervenor Counter-Plaintiffs*

 */s/ Lynn E. Saarinen*
LYNN E. SAARINEN
Assistant Attorney General



September 13, 2022

To: Judge Becerra and the Hays County Commissioner's Court
RE: SH 45 Gap Project

Members of the Travis County Commissioners Court learned that on August 30, 2022, the Hays County Commissioners Court voted 4-1 to approve a $2.5 million engineering and design contract to "complete the missing section of SH 45" between I-35 and FM 1626, connecting I-35 to South Mopac. We are writing to make clear our opposition to this action by Hays County.

For many years, both the City of Austin and Travis County have opposed the inclusion of the I-35 to FM 1626 connection in the Capital Area Metropolitan Planning Organization's (CAMPO) regional transportation plans. This project is also not included in TXDOT's recently updated 10 year funding plan, the 2023 Unified Transportation Program.

Making the connection from I-35 to FM 1626 would effectively make Mopac an I-35 bypass, dramatically increasing vehicular and truck traffic. The traffic impacts of this decision by Hays County would have a profound and detrimental effect almost entirely on Austin and Travis County. The fact that there has been virtually no effort to coordinate this action with either Austin or Travis County is unacceptable. We cannot imagine a scenario where a similar action by Austin or Travis County, that would have such an enormous traffic impact on a neighboring County, would be considered acceptable without extensive regional coordination and cooperation.

Furthermore, currently CAMPO requires any projects that are partially inside another jurisdiction have written concurrence from the jurisdiction in which the project is partially located in order for a project to be included in the CAMPO Regional Transportation Plan.

We are particularly concerned that during the brief discussion of this item, Hays County Commissioners Jones and Smith characterized the views of Travis County Commissioners Howard , Gomez and Travillion as "very positive" about the project. We are writing to make clear that this is not an accurate portrayal of their views.

Additionally, this connection will increase traffic over environmentally sensitive lands that include Balcones Canyonlands Preserve lands, City of Austin Water Quality Protection lands, karst features,

Edwards Aquifer, endangered species habitat, and conservation easements. The increased traffic and accompanying growth would put the region's water quality and environment at greater risk.

Both Austin and Travis County have invested heavily, using voter approved bonds, in preserving Barton Springs and its watershed, as well as habitat for numerous endangered species. For more than two decades the City of Austin, with broad community support, has enacted policies and made significant investments in the protection of water quality in the Barton Springs Zone of the Edwards Aquifer. Measures taken include:

- o Implementation of the citizen-initiated Save Our Springs ordinance, which
  - limits impervious cover and requires non-degradation levels of stormwater treatment for development of sites in the Barton Springs Zone; and
  - requires mitigation plans/infrastructure for potential hazardous and/or toxic waste spills over the aquifer, which is especially important for any proposed route that would reroute truck traffic from I-35 across the Aquifer;
- o Investment of $143 million in voter-approved bonds (to date) in the acquisition and preservation of 27,000 acres of land in the recharge and contributing zones; and
- o Commitment, both legally and financially, to protect rare and endangered species pursuant to two permits issued under the Federal Endangered Species Act."[1]
  [1]*Transportation and Environmental Challenges Associated with the Proposed State Highway 45 Southwest,* City of Austin, August 2011.

**Status of Project in Local and Regional Transportation Plans**

The current adopted transportation plan for Travis County, the *Travis County Transportation Blueprint*, approved unanimously by Commissioners Court in July 2019, does not include this segment in its Roadway Plan.

Also, the current regional transportation plan, the *CAMPO 2045 Regional Transportation Plan,* does not include the connection of SH 45 SW from I-35 to FM 1626 in the "Constrained Project List", "Illustrative Project List" (used for ROW reservation) or in any maps of those lists.

- o There is a study identified in the Study List sponsored by Hays County called "New Facility" with limits from FM 1626 – I-35.
- o The study includes the following project description: "Design of environmental and preliminary engineering for new freeway".
- o No associated project is identified in the Constrained Project or Illustrative lists.

In conclusion, we are sending this letter to make clear that the Travis County Commissioners Court is opposed to this action by Hays County. It is unacceptable to undertake the project development process for a transportation infrastructure project that would have such an adverse impact on the residents of Travis County without thorough collaboration and coordination in advance of such action. We request you halt action on this study until such collaboration and coordination is undertaken.

Sincerely,

Andy Brown
Travis County Judge

Jeffrey W. Travillion, Sr.
Commissioner, Precinct 1

Brigid Shea
Commissioner, Precinct 2

Ann Howard
Commissioner, Precinct 3

Margaret J. Gómez
Commissioner, Precinct 4

DocuSign Envelope ID: 85680896-2CD4-42A3-96E6-D949EF93F064



**TRAVIS COUNTY COMMISSIONERS COURT COMMENTS FOR SUBMISSION TO THE VIRTUAL SH 45 GAP STUDY OPEN HOUSE DURING THE PUBLIC COMMENT PERIOD OF DECEMBER 7, 2023 THROUGH DECEMBER 22, 2023**

For many years, both the City of Austin and Travis County have opposed the inclusion of the I-35 to FM 1626 connection in the Capital Area Metropolitan Planning Organization's (CAMPO) regional transportation plans. This project is also not included in TXDOT's recently updated 10 year funding plan, the 2024 Unified Transportation Program.

Making the connection from I-35 to FM 1626 would effectively make Mopac an I-35 bypass, dramatically increasing vehicular and truck traffic. The traffic impacts of this decision by Hays County would have a profound and detrimental effect almost entirely on Austin and Travis County, as well as the residents and unique environmental and other resources located in Travis County. The fact that there has been virtually no effort to coordinate this action with either Austin or Travis County is unacceptable. We cannot imagine a scenario where a similar action by Austin or Travis County, that would have such an enormous traffic impact on a neighboring County, would be considered acceptable without extensive regional coordination and cooperation. Accordingly, we want to state our concerns on the record about the lack of transparency and input in connection with this proposed project.

Furthermore, currently CAMPO requires any projects that are partially inside another jurisdiction have written concurrence from the jurisdiction in which the project is partially located in order for a project to be included in the CAMPO Regional Transportation Plan. This has not happened.

Additionally, this connection will significantly increase traffic over environmentally sensitive lands that include Balcones Canyonlands Preserve lands, City of Austin Water Quality Protection lands, karst features, Edwards Aquifer, endangered species habitat, and conservation easements. The increased traffic and accompanying growth would put the region's water quality and environment at greater risk. Yet, there has been no comprehensive analysis of the impacts of this project (and less damaging alternatives) in order to inform whether and how this project should proceed.

Both Austin and Travis County have invested heavily, using voter approved bonds, in preserving Barton Springs and its watershed, as well as habitat for numerous endangered species. For more than two decades the City of Austin, with broad community support, has enacted policies and made significant investments in the protection of water quality in the Barton Springs Zone of the Edwards Aquifer. Measures taken include:

- Implementation of the citizen-initiated Save Our Springs ordinance, which
  - limits impervious cover and requires non-degradation levels of stormwater treatment for development of sites in the Barton Springs Zone; and
  - requires mitigation plans/infrastructure for potential hazardous and/or toxic waste spills over the aquifer, which is especially important for any proposed route that would reroute truck traffic from I-35 across the Aquifer;
- Investment of $143 million in voter-approved bonds (to date) in the acquisition and preservation of 27,000 acres of land in the recharge and contributing zones; and
- Commitment, both legally and financially, to protect rare and endangered species pursuant to two permits issued under the Federal Endangered Species Act."[1]

  [1]*Transportation and Environmental Challenges Associated with the Proposed State Highway 45 Southwest,* City of Austin, August 2011.

We are concerned that this project, as proposed, would substantially undermine Travis County's longstanding efforts to fund and protect these sensitive and unique resources—issues that we urge you to examine in detail (with Travis County's input) before any decision is made.

DocuSign Envelope ID: 85680896-2CD4-42A3-96E6-D949EF93F064

**Status of Project in Local and Regional Transportation Plans**

The current adopted transportation plan for Travis County, the *Travis County Transportation Blueprint*, approved unanimously by Commissioners Court in July 2019, does <u>not</u> include this segment in its Roadway Plan.

Also, the current regional transportation plan, the *CAMPO 2045 Regional Transportation Plan*, does <u>not</u> include the connection of SH 45 SW from I-35 to FM 1626 in the "Constrained Project List", "Illustrative Project List" (used for ROW reservation) or in any maps of those lists.

- o There is a study identified in the Study List sponsored by Hays County called "New Facility" with limits from FM 1626 – I-35.
- o The study includes the following project description: "Design of environmental and preliminary engineering for new freeway".
- o No associated project is identified in the Constrained Project or Illustrative lists.

In conclusion, we are submitting these comments to express the Travis County Commissioners Court's vigorous opposition to the SH 45 Gap Study. At minimum, we request an in-depth evaluation of these issues, with input from affected jurisdictions (including Travis County), to consider alternatives for avoiding, minimizing, and mitigating harm to people and resources located mostly in our jurisdiction.

Please contact Cynthia McDonald, County Executive for Transportation and Natural Resources, 512-854-9418, Cynthia.McDonald@traviscountytx.gov to discuss this Project.

DocuSigned by:

*Andy Brown*

Andy Brown
Travis County Judge

DocuSigned by:

*Jeffrey Travillion*

Jeffrey W. Travillion, Sr.
Commissioner, Precinct 1

DocuSigned by:

*Brigid Shea*

Brigid Shea
Commissioner, Precinct 2

DocuSigned by:

*Commissioner Ann Howard*

Ann Howard
Commissioner, Precinct 3

DocuSigned by:

*Margaret J. Gómez*

Margaret J. Gómez
Commissioner, Precinct 4

| | |
|---|---|
| **From:** | Brigid Shea |
| **To:** | "debbiei@co.hays.tx.us"; "michelle.cohen@co.hays.tx.us" |
| **Cc:** | Comm2; Scheleen Walker; Charlie Watts; Cathy Stephens; Cynthia McDonald; Sydnia Crosbie |
| **Subject:** | SH 45 Southwest Extension Discussion / Request for Removal |
| **Date:** | Monday, August 26, 2024 3:55:14 PM |
| **Attachments:** | 518_Hays_Travis_County_Letter_-_Sep_13_2022_-_1-16_PM.pdf |
| | TCCC SH 45 Gap Study Complete_with_DocuSign_2023-12-19_Item_48_TC.pdf |
| | SH 45 Southwest Extension.pdf |

Commissioners Ingalsbe & Cohen,

I greatly appreciate you taking the time to meet and discuss our concerns with the Hays County Bond project "SH 45 Southwest Extension", also known as the SH 45 Gap Project.

**My request is that the Hays County Commissioners Court remove the "SH 45 Southwest Extension" project from their bond package since roughly half of this road is in Travis County and the Travis County Commissioners Court is on record opposing the SH 45 Gap Project**. Also, please eliminate references to Travis County as being a "potential partner" on this project in all current and future documents, as this is not accurate.

I also recommend that Hays County contact TxDOT regarding their inclusion as a "potential partner" in your bond documents, given the feedback our staff received from them. TxDOT stated that they have not provided concurrence to this project for inclusion in CAMPO's 2050 Regional Transportation Plan (RTP) as an on-system facility.

The SH 45 Gap project is not included in the current CAMPO 2045 Plan**. Has Hays County or the City of Buda submitted an application for inclusion in the CAMPO 2050 RTP update?**

According to Ashby Johnson, CAMPO Executive Director, to include a project located in multiple jurisdictions in the CAMPO Regional Transportation Plan, the project sponsor must get concurrence from all other jurisdictions that the project is in. Travis County staff has not received a request for concurrence for the SH 45 Gap project in the CAMPO 2050 RTP.

Thanks again for meeting with me and our transportation staff. I look forward to continuing our conversation and to working with you both on other issues.

Best regards,

Brigid

**Attached documents:**

1. *(9/13/22)* TC Commissioners letter sent to Hays County Commissioners to oppose the approval of the engineering and design contract to "complete the missing section of SH 45" between I-35 and FM 1626, connecting I-35 to South Mopac.
2. *(12/22/23)* TC Commissioners Court official comments sent to the Hays County SH 45 Gap Study Open House #2, stating opposition to the Gap Study.
3. *(2024)* Hays County document from the 2024 "SH 45 Southwest Extension" bond project that lists Travis County and TxDOT as "potential partners".

**In case it's helpful, here's a brief history of SH 45:**

- Decades ago, a comprehensive project was originally proposed as a multi-lane highway around the City of Austin (the "Outer Loop" or "Ring Road")
    - There was a vigorous debate within the Austin/Travis County community about the proposed "Ring Road", given its location over the most environmentally sensitive areas

within Hays County, Travis County and Austin.

- The developers that were supporting this roadway project decided to break the comprehensive project into small segments to avoid a more extensive Environmental Impact Statement for NEPA review due to SH45 segments traversing environmentally sensitive areas.
- The "SH 45 Southwest Extension" (SH 45 between I 35 and RM 1626) is one of the final pieces yet to be implemented to complete the "Ring Road".

- In 2022, the Hays County Commissioners Court funded and hired a consultant team to study the feasibility of "constructing SH 45 between I35 and RM 1626". This study was included in the CAMPO Regional Transportation Plan (RTP) 2045 update as a locally funded study.

- Since that time, the Travis County Commissioners Court has sent two official communications from the full Court, adopted unanimously (attached):
  - One to the Hays County Commissioners Court members, and
  - One during the Hays County SH 45 Gap Study Open House #2 public comment period.

- The current adopted transportation plan for Travis County, the *Travis County Transportation Blueprint*, approved unanimously by Commissioners Court in July 2019, does not include the SH 45 Gap Project in its Roadway Plan.

- The current regional transportation plan, the *CAMPO 2045 Regional Transportation Plan,* does not include the connection of SH 45 SW from I-35 to FM 1626 in the "Constrained Project List", "Illustrative Project List" (used for ROW reservation) or in any maps of those lists.

*Brigid Shea*

**Travis County Commissioner, Pct. 2**
**brigid.shea@traviscountytx.gov**
**traviscountytx.gov**



*USA Board Chair*
*Local Governments for Sustainability*
*icleiusa.org*

# SH 45 SOUTHWEST EXTENSION

## PRECINCT 4

**PROJECT LIMITS:** **FM 1626 TO I-35 (TRAVIS COUNTY)**

**PROJECT DESCRIPTION:** **THIS PROJECT IS DESIGNING A 4 LANE DIVIDED HIGHWAY**

**PROJECT SELECTION REASON:** **THIS PROJECT WILL ALLOW EASIER ACCESS TO I-35**





| | |
|---|---|
| Project Type | **Regional Connectivity** |
| Typical Section | **4 Lanes Divided** |
| Length | **1.9 Miles** |
| Bond Scope | **Design** |
| Estimated Cost | **$7,095,000** |
| Potential Partners | **TxDOT, Travis County** |

## Project Location Map



PROJECT AREA

**2025 WL 2004685**
Only the Westlaw citation is currently available.
Supreme Court of Texas.

SIX BROTHERS CONCRETE PUMPING, LLC,
Petitioner,
v.
TEXAS WORKFORCE COMMISSION and Martin
Tomczak, Respondents

No. 23-0711
|
OPINION FILED: July 18, 2025
|
Rehearing Denied July 18, 2025

On Petition for Review from the Court of Appeals for the First
District of Texas, Gordon Goodman.

**Attorneys and Law Firms**

Curt Hesse, Melissa Moore, Moore & Associates Lyric
Centre, Houston, for Petitioner.

William Cohen, Brent Webster, Ralph Molina, Steven Craig
Robinson, Office of the Attorney General, Austin, Deborah
Rao, Austin, James Lloyd, Deputy Attorney General for Civil
Litigation, Austin, Samuel Dorfman, Texas Business Court,
Houston, Scott Dale Simmons, Assistant Attorney General,
Austin, Thales Smith, McElroy, Sullivan, Miller & Weber,
L.L.P., Austin, W. Kenneth Paxton Jr., Attorney General of
Texas Office of the Attorney General, Austin, for Respondent
Texas Workforce Commission.

Gregg M. Rosenberg, Nazanin Salehi, Rosenberg &
Associates, Houston, for Respondent Tomczak, Martin.

**Opinion**
**\*1** Rehearing of petition for review denied.

Justice Young, joined by Justice Busby, concurring in the
denial of the motion for rehearing.
On the surface, this case concerns $1,000—the amount of
unpaid wages that Martin Tomczak claims from his former
employer, Six Brothers Concrete Pumping, LLC. Six Brothers

fought Tomczak in administrative proceedings before the
Texas Workforce Commission and lost. The court of appeals
agreed with the district court that Six Brothers's lawsuit must
be dismissed for lack of subject-matter jurisdiction. This
Court denied Six Brothers's resulting petition for review, and
Six Brothers has filed a motion for rehearing raising two
important issues. The first implicates the line between public
and private litigation. A statute required Six Brothers to sue
the commission, thus injecting "sovereign immunity" into
what at its core is just a private dispute between Six Brothers
and Tomczak. The second issue involves the jurisdictional
consequences of filing suit in the wrong venue. Here, Six
Brothers's apparent error in selecting venue led to its
otherwise timely suit being dismissed on jurisdictional
grounds.

The issues that Six Brothers raises are far from settled and
warrant further consideration in a suitable case. I write
separately to address why the issues matter and why the Court
nonetheless properly denies the motion for rehearing in this
particular case.

**I**

Martin Tomczak initiated an administrative proceeding and
sought unpaid wages from his former employer, Six Brothers.
Using its authority as provided in the Texas Payday Law, the
commission ruled for Tomczak, ordering Six Brothers to pay
$1,000. Six Brothers timely "br[ought] a suit to appeal the
order" and, as required by statute, named both the commission
and Tomczak as "defendants in the suit." Tex. Lab. Code §
61.062(a)–(c). Six Brothers made the apparently fateful
decision to bring suit in *Harris* County, not in neighboring
*Montgomery* County, where Tomczak resided.

Six months into the litigation, the commission filed a plea to
the jurisdiction, arguing that because Six Brothers failed to
bring suit "in the county of the claimant's residence," *id.* §
61.062(d), the Harris County trial court lacked subject-matter
jurisdiction. The commission argued that this mandatory-
venue provision is a "[s]tatutory prerequisite[ ] to a suit,"
meaning that it is a "jurisdictional requirement[ ]" in this "suit[
] against a governmental entity." *See* Tex. Gov't Code §
311.034. Despite Six Brothers's arguments that venue does not

implicate subject-matter jurisdiction and that objections to it are waivable, *see* Tex. R. Civ. P. 86.1, the trial court granted the commission's plea and dismissed Six Brothers's suit "for want of jurisdiction with prejudice."

The court of appeals affirmed, holding in an "issue of first impression" that "the mandatory venue requirement in [Labor Code § 61.062(d)] is a statutory prerequisite to suit [under Government Code § 311.034], making failure to adhere to it a jurisdictional bar to suit." 679 S.W.3d 746, 748 (Tex. App.— Houston [1st Dist.] 2023). To get there, it (correctly) observed that "[a] statutory prerequisite is a requirement that: (1) is found in the relevant statute; (2) is required by the relevant statute; and (3) must be met before the suit is filed." *Id.* at 749, 751 (citing *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 511–12 (Tex. 2012)). The court of appeals homed in on the last element and noted that § 61.062(d) states that suits like Six Brothers's "*must* be brought" in a certain venue. *Id.* at 751 (emphasis added) (quoting Tex. Lab. Code § 61.062(d)). The court reasoned that because "[t]he term 'must' in a statute creates a condition precedent," and "[a] condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation," the condition precedent found in § 61.062(d) "is a statutory prerequisite," and the "trial court did not err in granting the commission's plea to the jurisdiction." *Id.* at 751–53 (first quoting Tex. Gov't Code § 311.016(3); and then quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)).

**\*2** Six Brothers sought this Court's review, but we denied its petition following briefing. Six Brothers then filed the motion for rehearing that the Court denies today, raising two significant issues. Because both issues are, at best, underdeveloped both in this case and in the courts of appeals generally, my vote comes with the hope that the issues presented in this motion will come before us again after the courts have had ample time to consider them. And thus, while I agree that it is right to deny the motion for rehearing, I think it is also proper to express my appreciation to Six Brothers and its counsel for helpfully identifying these issues.

## II

I proceed as follows.

First, Government Code § 311.034 is inapplicable unless Six Brothers's suit is actually "against" the commission. Is it? I have my doubts. Tomczak invoked the commission's authority to function as an executive-branch tribunal, statutorily charged with resolving the Six Brothers–Tomczak dispute. To obtain review of that resolution, Labor Code § 61.062(d) required Six Brothers to file a new lawsuit naming the commission as a defendant. Does such a lawsuit—a *procedural* mechanism to trigger further review—constitute a suit "against" the commission? If so, can *any* essentially private litigation be funneled through an administrative process, which (by requiring a new lawsuit to trigger judicial review) would imbue the administrative result with the attributes of sovereign immunity? In other words, if sovereign immunity is only "waived" (thus allowing Six Brothers to secure judicial review of the order compelling it to pay Tomczak) subject to § 311.034's requirements, could the legislature preclude judicial review of agency adjudications of private disputes by refusing to "waive" sovereign immunity altogether? At the very least, constitutional avoidance may justify treating essentially private cases as not "against" the State if the state agency is a party only for procedural reasons.

Second, and assuming that the lawsuit *is* one against the State, it is not readily apparent that mandatory-venue provisions are properly characterized as "statutory prerequisites to suit." Perhaps they are, but the distinction between getting venue wrong versus, for example, failing to sue on time or to comply with administrative-exhaustion requirements seems potentially significant.

I address these issues in turn.

### A

Begin with the threshold question of whether Six Brothers's suit is in fact a "suit[ ] *against* a governmental entity." Tex. Gov't Code § 311.034 (emphasis added). On rehearing, Six Brothers reiterates its petition's assertion that its suit is against a governmental entity "in name only." The careful reader will notice, however, that the court of appeals never wrestled with Six Brothers's argument—and that is because Six Brothers never raised it before that court. Instead, when determining

whether the mandatory-venue provision in Labor Code § 61.062(d) was a statutory prerequisite to suit, the court simply noted that § 61.062 generally provides a limited waiver to "the commission's sovereign immunity" and so assumed that Government Code § 311.034 applies. 679 S.W.3d at 749.

This Court rarely will be the initial one to consider a legal contention because we sit as a court of final review, not a court of first instance. Six Brothers's arguments nonetheless warrant mention, if only to assist future litigants, the lower courts, and this Court's eventual review.

Six Brothers's arguments contesting the court of appeals' assumption that § 311.034 applies go like this: While the commission must be named as a defendant, it has no real skin in the game—the *only* "real parties in interest" are Six Brothers and Tomczak, so sovereign immunity is not implicated. The commission counters that it is a "real party" because it "has a very real interest in the outcome of this Payday Law litigation." And, it says, because "this is a suit regarding an agency action" and "is a traditional suit against a governmental entity," "sovereign immunity is implicated."

**\*3** The statute, quoted in relevant part, helps assess these competing views:

> In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.... Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in *all suits against a governmental entity.*

Tex. Gov't Code § 311.034 (emphasis added). From the outset, the plain language of the statute captures "all suits against" governmental entities—not a specified subset or distinct portion, but *all.* If a petition in which the governmental entity must be a named party is *not* a "suit against a governmental entity," the obvious question is *why*?

Answering that question "lies in considering the statute's text in its legal context." *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 736 (Tex. 2024) (Young, J., dissenting) (alterations incorporated) (quoting *Pulsifer v. United States*, 601 U.S. 124,

141, 144 S.Ct. 718, 218 L.Ed.2d 77 (2024)). The key statutory term to be understood in context is not "all," but "against." In other words, once we can ascertain a rule to determine if a case is a "suit against a governmental entity," then the result is easy—*all* such suits are subject to § 311.034.

But is it clear that "against" means "if the governmental entity is a named party"? Section 311.034 does not simply state that rule, for one thing; it begins with a textually enacted rationale, which is "managing state fiscal matters." Proper textualist inquiry does not consider unstated or generalized legislative motivations, but when enacted as part of the text, a specifically stated purpose "can shed light on the meaning of the operative provisions that follow," though it "cannot give words and phrases of the dispositive text itself a meaning that they cannot bear." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 35, 218 (2012).

So the whole game reduces to determining what § 311.034 means by "against a governmental entity." It is possible that merely naming a governmental entity in any suit is enough—but, as I describe below, that position seems in tension with common sense, our precedents, and potentially even constitutional protections of private rights. For the moment, I assume that something more than merely having a governmental entity named as a "defendant" is required. But what else?

Perhaps the traditional common-law method of reasoning from the specific case before us in light of existing law might prove fruitful. Doing so in this case could start with examining the mechanics behind the Texas Payday Law to suss out whether, consistent with traditional understandings of everyday adversarial litigation against the government, Six Brothers's suit is "against" the commission. We can then look to the usual sovereign-immunity principles to uncover whether this "suit" implicates that doctrine.

The parties begin by disputing whether the commission is a "real party in interest" to Six Brothers's suit such that the litigation is truly "against" that governmental entity within the meaning of Government Code § 311.034. Six Brothers emphasizes, for example, that it "is not seeking damages from any governmental entity" and that "[n]o judgment in this case would require any governmental entity to pay anything to Six Brothers." According to the commission, however, the

# TAB D

requirement that it be made a defendant to the suit, Tex. Lab. Code § 61.062(d), "indicates the Legislature's intent that the [c]ommission be a full participant in the litigation, not simply a nominal representative of the party [it] found for at the administrative level." If it "is merely a nominal party," the commission continues, "then the text of § 61.062(d) that requires [it] to be a separate independent defendant is meaningless and superfluous."

**\*4** Notably, in casting itself as anything but a "nominal party," the commission argues again and again that the legislature has "*charged* [it] with defending ... its final wage claim decisions," "*mandated*" as much, and "*require*[*d*] [it] to muster a defense" in suits like this one. (Emphasis added.) But it has not identified a single provision within the Payday Law *requiring it* (as opposed to simply permitting it) to defend its administrative decisions in the trial courts.

Analogously, a district judge is nominally the respondent (or defendant) in a mandamus action—but "the real party in interest" is always the litigant who has benefited from whatever action the judge took that prompted the other side to seek mandamus relief. The district judge must be named—and is authorized to formally respond—but as a neutral arbiter, the judge has no interest in the case other than the law being properly applied. That interest is the same interest that the justices of the court of appeals have in this and any other case. They are not formally named as "respondents" when a petitioner seeks this Court's review. Their position, though, is functionally identical to the commission's when its determinations in a case like this one are challenged in litigation or to a district judge's when her orders are subject to a mandamus action.

True, the legislature has charged, mandated, and required the commission to "administer" and "adopt rules as necessary to implement" the Payday Law. Tex. Lab. Code § 61.002(a)(1)–(2). The legislature designed the Payday Law's administrative scheme to provide another outlet for claimants like Tomczak to vindicate their claims. *See id.* § 61.051(a) (providing that "[a]n employee who is not paid wages as prescribed by this chapter *may file* a wage claim with the commission" (emphasis added)). Once a claimant invokes the administrative scheme, the commission has the authority to order wage payment and assess administrative penalties. *See, e.g., id.* §§ 61.052(a)(2), .053(a)–(b), .0613(a)(2)–(3). But the

commission's adjudication is nothing inherently special—claims like Tomczak's are familiar in litigation, and his claim could have been initially filed in the normal course (*i.e.*, in any number of state courts) without ever involving the agency. *Cf. Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 88 (Tex. 2008) (explaining that by invoking the Payday Law's administrative scheme "to a final decision, [the claimant] forgoes his common law claims").

But *Tomczak* invoked the administrative process, leaving Six Brothers with no choice but to proceed "against" both Tomczak and the commission when it sought judicial review of the commission's decision. Again, however, the commission points to no statutory mandate that it *defend* the suit (any more than a district judge named as a respondent in a mandamus action is mandated to defend her order). That may be different, however, where the commission has assessed administrative penalties against an employer, paid not to the employee but to the government. *See* Tex. Lab. Code § 61.053(a) (permitting penalties where "the commission determines that an employer acted in bad faith in not paying wages"). The commission at least has an interest in seeing that those funds are eventually deposited "in the unemployment compensation special administration fund," *see id.* § 61.065, and the legislature could have required the commission's presence as a defendant to protect that interest. (Whether such an action could be denied judicial review by denominating it a suit "against" the government and then purporting to withdraw sovereign immunity raises various other issues, of course.)

**\*5** Yet the commission did not assess an administrative penalty here. So rather than to defend such a penalty, the commission's presence as a defendant here operates almost entirely to vindicate Six Brothers's or Tomczak's private interests. The Labor Code provides, for example, that once the commission reaches a final decision against the employer, the employer must "send the amount [owed to the wage claimant] to the commission for deposit in an interest-bearing escrow account" should the employer seek judicial review of the decision. *Id.* § 61.063(a)(2). If a court decides that "some or all of the [amount owed] is reduced or is not assessed," then "the commission shall remit the appropriate amount to the party ... plus the interest accrued on the escrowed amount." *Id.* § 61.063(c). Thus, an entry of judgment against both a wage claimant and the commission ensures that the commission

remits the funds the employer (here, Six Brothers) escrowed with the commission. Conversely, an entry of judgment against the employer ensures that the commission "pay[s] to the claimant" (here, Tomczak) "wages collected ... and any interest earned on those wages." *See id.* § 61.064.

In other words, this suit directly implicates Six Brothers's and Tomczak's rights and liabilities, but it affects the commission's only in an attenuated way at most. Specifically, the administrative decision below might have hinged on the commission's legal interpretation of the Payday Law, giving it an independent interest in participating in this litigation by defending that interpretation. Consistent with my reference above, Six Brothers counters that this interest "is no different than th[is] Court's interest in resolving this petition." True, the judges of this Court, the courts of appeals, and the trial courts vindicate their interests in defending their interpretations of constitutional provisions, statutes, or contracts by written decisions or judgments—just as I do here. But for a lower court to regard itself as now a co-appellee or co-respondent with the prevailing party as a case makes its journey to the higher courts—lodging objections, filing briefs, and participating in arguments—would be bizarre. That is why naming a judge in a mandamus action is not bringing suit "against" that person in the traditional sense.

All told, however, these competing arguments are, at best, underdeveloped and will benefit from the courts of appeals' consideration. While the commission no doubt has "a right to make [a] defense" in this litigation, the legislature's decision to mandate the commission's being named as a defendant could be interpreted either to *require* that the commission muster a defense or to *ensure* that it is bound by the eventual judgment (and ultimately pays the prevailing party)—or both. *Cf. Am. Indem. Co. v. Fellbaum*, 114 Tex. 127, 263 S.W. 908, 910 (1924) (concluding that an indemnity company, "though not technically a party," was nevertheless "a party to th[e] suit" and thus "bound by the judgment" because "[i]t had a right to make the defense, control the proceedings, [and] examine and cross-examine the witnesses" such that the suit was for all intents and purposes a suit "against" that company). The waters get even muddier as the parties turn to the broader statutory context—namely, whether Six Brothers's "suit" falls within the meaning of that term in Government Code § 311.034 because it implicates sovereign immunity.

"Sovereign immunity protects the State from lawsuits for money damages." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). There can be no dispute that a judgment for Six Brothers here would not implicate the State's fisc in the traditional sense. So, as Six Brothers notes, § 311.034's concern for "preserv[ing] the legislature's interest in managing *state fiscal matters* through the appropriations process" falls a bit flat. (Emphasis added.) Still, we have said that "[w]here the purpose of a proceeding against state officials is to control action of the State or subject it to liability, the suit is against the State and cannot be maintained without the consent of the Legislature." *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152 (1960). In other words, these "suits" implicate sovereign immunity, whereas "suits to compel state officers to act within their official capacity do not attempt to subject the State to liability" and thus "do not implicate the sovereign-immunity doctrine." *IT-Davy*, 74 S.W.3d at 855–56 (noting that as opposed to "certain declaratory-judgment actions against state officials," those "seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities" implicate sovereign immunity because they "attempt to control state action by imposing liability on the State"). In other words, our precedents suggest that the legislature was well aware that simply naming a state entity as a defendant did *not* legally transform the case into a suit "against" the State.

**\*6** So where does Six Brothers's suit fall? As the commission notes, and as I have confirmed above, "if it is ultimately determined after judicial review that substantial evidence does not support the wage claim decision, [the commission] ... is required to act, in remitting the appropriate amount to whom which judgment is rendered." Does that make Six Brothers's suit one to "control state action"? Or is it simply one that ultimately compels a state agency "to act within its official capacity"? Does the answer depend on whether the commission assessed an administrative penalty? Or is the analysis more holistic, demanding a review of the nature of the commission's defense before the trial court? It is no doubt conspicuous that Tomczak's counsel did not defend the trial court's judgment in either this Court or in the court of appeals—instead resting entirely on the commission's papers. These questions and quirks—and surely more unknown—are ripe for review in the lower courts as they confront cases like this one.

And yet here, Six Brothers did not advance these arguments or identify the quirks of the Payday Law that I have described. The arguments it now presents, however, provide a significant benefit to the State by airing out serious questions of administrative law, sovereign immunity, and even potentially the private constitutional rights of individual litigants. The judiciary may find that it is necessary to give "against a governmental entity" a narrower reading to avoid serious constitutional questions. Such a reading may include only cases that genuinely involve governmental financial interests or that would require the government to take actions wholly collateral to adjudicating the rights of private parties. It is precisely because these questions are so important that the Court today properly denies the motion for rehearing as to this ground, thus allowing fuller consideration in future litigation, starting at the trial-court level.

## B

But that is not the only issue Six Brothers raises. It also argues that even if the suit is one "against" the commission, the mandatory-venue provision in Labor Code § 61.062(d) is not a "statutory prerequisite to suit," and thus Government Code § 311.034 does not impose any jurisdictional consequences for Six Brothers's failure to bring suit in Harris County. It distinguishes the provision from those that this Court has held were statutory prerequisites to suit in a trilogy of decisions interpreting § 311.034: *Chatha*, 381 S.W.3d 500; *City of Madisonville v. Sims*, 620 S.W.3d 375 (Tex. 2020); and *Texas State University v. Tanner*, 689 S.W.3d 292 (Tex. 2024). And it cites various lower-court opinions holding that various venue provisions, including § 61.062(d), are not jurisdictional. As I shall explain, however, this issue (like the one explored above) will benefit from further percolation among the courts of appeals.

Start with *Chatha*, which was the first of our cases to "constru[e] [§ 311.034's] reach." 381 S.W.3d at 510. In 2005, the legislature amended § 311.034 to make all "statutory prerequisites to suit[ ] jurisdictional as to governmental entities" (at least for suits "against" such entities). *Id.* at 511. The legislature, we said, was responding to a pair of our decisions that had overruled a longstanding rule establishing

that "strict compliance with all statutory prerequisites is necessary to vest a trial court with jurisdiction." *Id.* at 510 (citing *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926)). The legislature's actions put us back to our prior precedent holding that "where the cause of action and remedy for its enforcement are derived not from the common law but from statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Id.* at 512 (quoting *Mingus*, 285 S.W. at 1087). We found the amended § 311.034's mandate to be "clear: In a statutory cause of action against a governmental entity, the failure to adhere to the statute's mandatory provisions that must be accomplished before filing suit is a jurisdictional bar to suit." *Id.*

**\*7** Turning to the provision at issue, *Chatha* held that the 180-day filing requirement for bringing discrimination claims under Chapter 21 of the Labor Code was "a mandatory statutory requirement that must be complied with before filing suit," meaning it was "a statutory prerequisite to suit under [§] 311.034." *Id.* at 503 (citing Tex. Lab. Code § 21.202). Key to the Court's decision was that "the term 'statutory *pre*requisite' refer[red] to statutory provisions that are mandatory and must be accomplished *prior to* filing suit." *Id.* at 512 (emphasis added). Because the claimant failed to "file a complaint" with the agency within 180 days—*i.e.*, before she filed suit—the Court held "that her suit [was] jurisdictionally barred by [§] 311.034." *Id.* at 503. The Court concluded by providing this guidance:

> [A] statutory prerequisite to suit, whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity.

*Id.* at 515.

*Chatha*, we have explained, was one example of an "administrative" prerequisite to suit, whereas we confronted a "procedural" prerequisite about a decade later in *Sims*. The Court there held that the Whistleblower Act's ninety-day filing deadline (a "procedural" provision) was "a statutory prerequisite to suit" under § 311.034. 620 S.W.3d at 377, 380 (noting that *Chatha* concerned an "administrative" prerequisite to suit). We observed that "an employee with a Whistleblower Act claim must strictly abide by the procedural

limitations set out in the Act to obtain relief." *Id.* at 379. "That include[d] the statute of limitations, which state[d] that an employee with a Whistleblower Act claim '*must* sue' within ninety days to obtain relief." *Id.* (quoting Tex. Gov't Code § 554.005). What clued us in was that "[t]he term 'must' create[d] a condition precedent," so "a claim that fail[ed] to meet that deadline may properly be disposed of by a jurisdictional plea." *Id.* (citing Tex. Gov't Code § 311.016(3) (" 'Must' creates or recognizes a condition precedent.")).

Rounding out the trilogy is *Tanner*, where we held that timely service of process was a statutory prerequisite to suit. 689 S.W.3d at 296. The case was an offshoot of *Sims*—a "procedural" prerequisite involving "bringing suit within limitations." *Id.* We acknowledged that *Chatha* contemplated actions that took place purely " 'before the lawsuit [was] filed' " but that *Chatha*'s phrasing "was incomplete." *Id.* at 300 (quoting *Chatha*, 381 S.W.3d at 512). True, "[s]ervice comes *after* filing," and "one could hardly expect it to be done *before* filing," but "while service follows filing, both are prerequisites to 'bringing' the suit." *Id.* (quoting the statutory phrase "bring suit" in Tex. Civ. Prac. & Rem. Code § 16.003(a)). Put differently, "[t]he suit is not 'brought,' and the statute of limitations is not satisfied, until the plaintiff achieves *both* steps." *Id.*

With this backdrop, Six Brothers asks this Court to return to § 311.034 and distinguish the mandatory-venue provision in Labor Code § 61.062(d) from those we confronted in *Chatha, Sims*, and *Tanner*. To be sure, § 61.062(d) does not fit neatly within the classes of provisions we have described as "statutory prerequisites to suit"—namely, *administrative* or *procedural* provisions like filing deadlines. Indeed, Six Brothers identifies several courts of appeals that, it says, "have held that venue is not a jurisdictional prerequisite to suit." And yet, upon closer inspection, it is not clear whether the cases Six Brothers cites remain good law following the legislature's amendment to Government Code § 311.034 or the *Chatha* trilogy. The timing of the authorities alone undermines Six Brothers's argument that "[t]his issue has received extensive analysis in the lower courts, making further percolation unnecessary."

**\*8** Take first the decisions Six Brothers cites that predate the legislature's decision to amend Government Code § 311.034. *E.g., Tex. Emps. Ins. Ass'n v. Singleton*, 616 S.W.2d 232, 233–

35 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.) (distinguishing *Mingus* and holding that venue provisions providing that a suit "may be brought either in the county where the injury occurred or in the county of the claimant's residence" were "merely venue provisions," not jurisdictional); *State v. Pounds*, 525 S.W.2d 547, 548 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.) (holding that a State Bar Act provision providing that "[n]o disbarment proceedings shall be instituted against any attorney except in the District Court located in the county of said attorney's residence" was not a "jurisdictional statute" and "relate[d] only to venue"); *see also Wichita County v. Hart*, 917 S.W.2d 779, 782–83 (Tex. 1996) (finding "no indication that the Legislature intended the Whistleblower Act's venue provision to be jurisdictional"). Perhaps confronted with this change in law, to say nothing of our decisions in *Chatha, Sims*, and *Tanner*, the San Antonio and Amarillo Courts of Appeals may change course and hold that the venue provisions at issue in *Singleton* and *Pounds* are now more properly characterized as "statutory prerequisites to suit" with statutorily imposed jurisdictional consequences.

Six Brothers's repeated references to cases from before § 311.034's enactment that describe venue as not "jurisdictional" are by themselves meaningless. This contention is not *wrong*, exactly; in private litigation, venue errors like this are *not* jurisdictional. But the question is whether such an error has *become* jurisdictional (only in suits against the government) because of § 311.034. For that reason, it is difficult to find any case persuasive in this discrete context if it does not engage with the new § 311.034 or the *Chatha* line of cases. *See, e.g., In re C.H.*, No. 13-17-00544-CV, 2019 WL 5251145, at \*2 (Tex. App.—Corpus Christi–Edinburg Oct. 17, 2019, no pet.) (holding that a provision stating that "the petition must be filed in a Travis County district court" was a "mandatory venue provision" that was not "jurisdictional" (citation omitted)).

Take next the principal case upon which Six Brothers relies, which suffers from the same bugs as *Singleton* and *Pounds* but at least pertains to the mandatory-venue provision at issue here. In *Kshatrya v. Texas Workforce Commission*, the court of appeals held that the trial court erred in concluding that the "failure to file suit in the county mandated by [Labor Code § 61.062(d)] deprived [it] of jurisdiction." 97 S.W.3d 825, 827 (Tex. App.—Dallas 2003, no pet.). Like the commission here,

the commission there "claimed it had not waived its immunity to be sued because [the plaintiff] did not bring suit in the county in which he lived ... as required by" § 61.062(d). *Id.* at 828. The court of appeals disagreed, concluding that "[t]his mandatory venue statute instructs the appealing party where to physically file suit, but there is nothing in the statutory language suggesting this is a jurisdictional prerequisite." *Id.* at 831. It ultimately held that "[b]ecause venue is not jurisdictional, the trial judge erred in granting the pleas to the jurisdiction in this case." *Id.* at 832.

Six Brothers urges this Court to follow *Kshatrya* even after the legislature's amendment to § 311.034 and our decisions in *Chatha, Sims,* and *Tanner.* True, the Dallas Court of Appeals appears to have at least flaggingly done so, as has at least one other court. *See Tex. Underground, Inc. v. Tex. Workforce Comm'n,* 335 S.W.3d 670, 674 n.1 (Tex. App.—Dallas 2011, no pet.) (reiterating *Kshatrya*'s holding that § 61.062(d) "is not a jurisdictional requirement"); *Gutierrez v. Gutierrez,* No. 05-14-00803-CV, 2016 WL 1242193, at *1 (Tex. App.—Dallas Mar. 30, 2016, no pet.) (holding that Family Code § 103.001 "is not jurisdictional" but rather "is a venue statute" like Labor Code § 61.062(d) (citing *Kshatrya,* 97 S.W.3d at 832)); *In re J.J.J.,* No. 14-08-01015-CV, 2009 WL 4613715, at *3 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, no pet.) (relying on *Kshatrya* for the proposition that "venue is not jurisdictional").

**\*9** Again, however, cases not involving the government are not instructive, and cases in which the argument based on § 311.034 was not pressed in the court of appeals can hardly constitute precedents about how venue statutes fare under § 311.034. These cases are unhelpful because absent in any of them is a discussion of § 311.034 *or* this Court's precedents. *Contra Mitschke v. Borromeo,* 645 S.W.3d 251, 256 (Tex. 2022) (explaining that "three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court *unless* a higher authority has superseded that prior decision" (emphasis added)).

The commission, for its part, identifies one post-amendment and post-*Chatha* case in which the court of appeals squarely held that a mandatory-venue provision *was* jurisdictional. *See Scott v. Presidio ISD,* 266 S.W.3d 531, 535–36 (Tex. App.—Austin 2008) (holding that the venue requirement under the Education Code was a statutory prerequisite to suit under §

311.034 and that failure to comply with the venue provision thus deprived the district court of jurisdiction), *rev'd on other grounds,* 309 S.W.3d 927 (Tex. 2010). The commission may be correct that under § 61.062(d), "a suit must be brought in the correct county," and "only after that has happened can it be properly filed." In other words, even if venue is "typically capable of being satisfied after filing suit," meaning it is not "typically" a "statutory *pre*requisite to suit," the court of appeals may have properly held that the mandatory-venue provision here "must be satisfied before the jurisdictional filing deadline to confer jurisdiction on a court in a suit against a governmental entity."

This is not to say that there are not strong reasons to think that Six Brothers may be right. Venue is at least arguably quite different for § 311.034's purposes from the kinds of requirements considered in *Chatha, Sims,* and *Tanner.* Indeed, as one civil-procedure textbook describes them, "[v]enue requirements exist to ensure that a case is litigated in a court that is conveniently located and has some connection to the lawsuit or to one or both of the parties." Joseph W. Glannon et al., *Civil Procedure* 368–69 (3d ed. 2017). One may readily see how the legislature might require suits like Six Brothers's to be filed in the county of Tomczak's residence, as that would have likely been Tomczak's venue of choice had he not resorted to administrative proceedings. And unlike the administrative and procedural provisions at issue in the *Chatha* trilogy, venue is—at least traditionally—readily remediable by the defendant's moving in the trial court for another, more convenient venue (say, where witnesses and evidence are located). Should he fail to do so, our Rules of Civil Procedure set forth how he will have waived his right to object to an allegedly improper venue. *See* Tex. R. Civ. P. 86.1. All this to say, § 61.062(d) may be "a garden-variety venue provision," one "which resembles many other venue provisions, none of which are thought to alter the jurisdiction of any court." *Paxton v. Am. Oversight,* —— S.W.3d ——, ——, 2025 WL 1793117, at *7 (Tex. June 27, 2025) (footnote omitted).

But the potential for a vibrant debate is a good reason for this Court to deny review, not to grant it. This Court should rarely if ever be on the frontlines of a legal issue that affects litigation across Texas in a host of contexts. Instead, parties should raise it in the lower courts and convert the *potential* for debate into its *reality.* At that point, and especially if division arises, this

Court will properly play its constitutional function of providing an authoritative statement about the requirements of the law. The Court is right to await a future case where the key arguments will both be made to and explored by our colleagues on the lower courts.

### III

**\*10** This is a small-dollar suit with Texas-sized implications. Having gone through the administrative process and lost, Six Brothers deserved an opportunity to air its dispute before a state tribunal. But having filed in the wrong venue, it lost that opportunity—forever. An untold number of employers and employees may await a similar fate, and Six Brothers rightly wonders whether the court of appeals' construction of the mandatory-venue provision at issue here insulates the administrative state from meaningful judicial review. For this reason, I am confident that the Court will receive further opportunities to address these issues in the fullness of time. On that understanding, I concur.

**All Citations**

--- S.W.3d ----, 2025 WL 2004685

# TAB D

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.